May T. STEBBINS and Barney W. Harrell, a Partnership, d/b/a Stebbins Construction Company, Plaintiffs in Error,

v.

R. H. SIEGFRIED COMPANY, Defendant in Error.

No. 37920.

Supreme Court of Oklahoma.
June 24, 1958.

Charles Dunn, Tulsa, for plaintiffs in error.

John Durfee, Farmer, Woolsey, Flippo & Bailey, Tulsa, for defendant in error.

JOHNSON, Justice.

R. H. Siegfried Company brought an action against the plaintiffs in error, defendants below, to recover a money judgment based upon an alleged contract of June 25, 1954, by the terms of which the plaintiff paid off certain indebtedness owed by the defendants in the amount of $98,427.73 and had taken title to all of the equipment of the defendants for an alleged figure of $68,-765, leaving an alleged balance due plaintiff of $26,291.85. That one item paid by plaintiff for defendants was for $62,750 due the First National Bank and Trust Company of Tulsa. This bank had secured from the defendants an assignment of moneys due from a certain government contract. After the bank was paid by the plaintiff, they in turn assigned this claim to the plaintiff, which assignment the defendants claim was void under 31 U.S.C.A. § 203.

Prior to this action the government issued a check made payable to Stebbins Construction Company for $23,721.94, which was the sum due on the assigned contract, but delivered it to their attorneys of record, which attorneys were made parties defendant, and they delivered the check into court and claimed an attorneys' fee. The matter of attorneys' fees was settled and is not now an issue in this case.

The record shows that in March, 1954, the defendants began to move dirt from a location known as the Sheridan Industrial Sites, which was owned by the plaintiff. This is admitted.

However, in this connection the plaintiff contended that in this dirt removal project it was to pay the expenses plus a small living allowance for the defendant, Barney Harrell, up until June 25, 1954, after which time Harrell was to receive a salary until September 20, 1954, when a separate corporation was formed to continue the dirt removal project and other contracts, at which time he was made the salaried manager of the newly formed corporation. The defendants contend that they were to be paid the regular and customary ownership rate for the use of their equipment and for the engineering services and supervision of Barney Harrell. It was further contended by the defendants that the agreement of June 25, 1954, was a continuing arrangement by its terms which was entered into for the convenience of the plaintiff for income tax purposes; that the amount of $68,765 was filled in by the plaintiff or its agent after the execution of the contract and did not represent a fair market value of the equipment; that the intention of the parties was to permit Stebbins Construction Company to redeem the equipment and continue in business.

The issues were joined on this basis with the defendants seeking a judgment on their cross-petition of $78,284.44, and further praying for the release to them of the government voucher impounded by the court.

A jury trial resulted in a verdict and judgment for plaintiff for $26,291.85 with six percent interest from October 5, 1954.

Defendants' motion for a new trial was overruled, resulting in this appeal.

Assignments of error are presented under three propositions which, in substance, are that the judgment was not responsive to the court's instructions, was contrary to the law and evidence, and that the assign-

ment of the government contract was null and void.

■ An examination of the record clearly demonstrates to us that the verdict and judgment is responsive to the court's instructions, and that the instructions, when considered as a whole, fairly presented the issues to the jury and, therefore, this contention is without merit. But in this circumstance, it is asserted by defendants that the court erred in directing a verdict for the plaintiff in the amount of $26,291.85 based upon the contract of June 25, 1954, as set forth in the court's instruction No. 1, paragraphs 4, 5 and 6.

This instruction reads as follows:

"4. The Court has heard all of the evidence relating to the contract of June 25, 1954, and tells you that as a matter of law that is a binding contract; that the defendants' evidence is insufficient to set aside that contract and that it is immaterial so far as a decision of this case is concerned as to whether this equipment was worth $68,775., as set forth in the contract, or the greater sum as contended by Stebbins. This is a solemn written agreement and contract entered into by the parties and cannot be lightly set aside. So, the rights of the parties as of June 25, 1954 were fixed and determined by this contract.

"5. By the terms of the contract the defendants agreed in writing that they were indebted to the plaintiff, Siegfried Company, in the sum of $29,-652.73. The plaintiffs admit that defendants are entitled to a credit in the sum of $3,360.88, represented by the sale of a TD 24 International Tractor made on or about October 5, 1954, reducing the amount owing by the Stebbins people to the Siegfried people by virtue of this contract to the sum of $26,291.85, with interest thereon at the rate of six percent per annum from October 5, *1944* (1954).

"6. In other words, I am taking away from your consideration this item

entirely and telling you that as a matter of law that the plaintiff is entitled to recover on its petition under this contract the sum of $26,291.85."

The record discloses that the answer, cross-petition and the testimony of the defendants admitted the indebtedness.

The contract signed by the defendants recited that the value of the equipment was $68,775. The promissory note signed by Harrell as president of Cosmo (the new corporation) was for $68,775.

Defendants attempted to prove that the value of the equipment was $95,969.88 on June 25, 1954 (the time that the contract selling the equipment to plaintiff was entered into) by a witness who had inventoried and appraised the equipment, but when the witness testified that there was no true market value of the equipment the court told him, "I don't see how you can testify then."

There was no other testimony as to the value of the equipment, other than defendant Harrell, who testified that he talked to Mr. Siegfried about the $68,755 figure in the contract; that Mr. Siegfried asked him if he had seen the appraisal, and he told him that he (Harrell) had and that it was for $95,000, and that he (Siegfried) asked him (Harrell) what he thought it was worth and he (Harrell) told him (Siegfried) about $107,000 for somebody who needed it and was in the contracting business, "and that was all that was said about it."

Mr. Siegfried testified in substance that he did not want to go into the contracting business, and that all he wanted was his money, and that if the defendants would pay him what was due him that he would return the equipment and business to them.

The next issue is whether there is any merit to the contention of defendants that they and Mr. Siegfried entered into an oral agreement that after July 1, 1954, the equipment would be used on the 11th and Sheridan dirt removal project and other contracts paying ownership rates, plus engineering and supervision services, and that the profits therefrom would be used to redeem the equipment or pay the indebtedness, or whether as alleged and as shown by the record title to all the equipment had been transferred to Siegfried when it paid defendants admitted $98,-427.73 indebtedness, which question and issue is clearly and obviously covered in Instruction No. 1, paragraphs 7 through 21.

This instruction reads as follows:

"7. That brings us up to the proposition that the Stebbins people while they were still the owners of this equipment—and they remained the owners of it until June 25, 1954, at which time by virtue of this contract this equipment became the property of R. H. Siegfried Company—but the testimony shows that from March up until the 25th day of June, 1954, under some sort of arrangement which will be for you to determine, the Stebbins people were using their equipment, together with the personal services of Mr. Harrell, in doing certain work out on Sheridan Street for the Siegfried Company. Now, Mr. Harrell has told you that in the beginning there was no exact understanding as to how he was to be compensated but says that later he suggested a six and a fraction cents which, paid on an ownership basis would be the proper amount, but I am unable to say from this evidence that there was ever any agreement between the parties on that.

"8. On the other hand, the Siegfried people say that Stebbins was financially depressed, that he wanted to keep his men together, needed a place for his equipment, and he agreed that he would use his equipment in this grading job, that he would supervise it, if Siegfried would pay all of the expenses, including repairs and gasoline, payrolls, and everything necessary in the way of money outlay, and give him $300.00 a month, that he would

work there at least on a temporary basis.

"9. Now, it is for you people to determine what agreement, if any, was actually entered into by the parties for the use of this machinery and Mr. Harrell's personal services from the period in March when this work began up until the 25th of June, 1954, when this sale of this equipment was made to Seigfried.

"10. Now, during that period of time it has been stipulated that 135,-275 yards of dirt was removed. So, for the removal of that dirt the Stebbins people are entitled to compensation, of course, less all of the monies that you find from the evidence that Siegfried paid into the job in the way of labor, materials, repairs, gasoline and compensation for Mr. Harrell.

"11. Now, if you find that there was no agreement actually entered into between the people, then the Court tells you that as a matter of law you should determine that amount on a quantum meruit basis, i. e., to say what would be reasonable and fair to pay for that character of service.

"12. In other words, you are instructed that a contract, whether written or oral, is an agreement between two or more parties, competent to contract, upon a lawful subject matter, with a legal consideration, a mutuality of agreement, and mutuality of obligation.

"13. No precise or set form of words is necessary to constitute a contract as the agreement of parties may be inferred from their acts and conduct as well as from their words.

"14. In order to constitute a contract between two parties, however, their minds must come together and agree upon all its essential terms and conditions. In other words, there must be a meeting of the minds of the contracting parties upon the essential terms and conditions of the subject about which they are contracting.

"(No. P–15)

"16. So, I reiterate, if you find from this evidence that there was an oral contract, then that would control.

"17. If, however, you find that they were so loose in their dealings that there was actually no meeting of their minds, then you should fix the compensation the Stebbins group are entitled to on a quantum meruit basis, that is a fair and reasonable figure for what was done out there.

"18. Now, I tell you that they have stipulated and agreed that 135,275 yards of dirt were moved. So, if you are to figure it on a quantum meruit basis, then the court suggests that it would be proper to multiply those number of yards by what would be the fair prevailing price per yard for moving dirt there for that period of time, and then deduct from that figure the money that you find from the evidence that Seigfried and Company spent for gasoline, materials, labor, etc., and for compensation for Mr. Harrell, that this would be one way of determining what would be a fair quantum meruit basis.

"19. Now, there has been testimony here that—well, Mr. Harrell has testified that at that time that 27¢ or 30¢ a yard would be a proper figure. And there is testimony on the other hand that 22½¢ would be proper. So it will be for you to determine from all of the evidence what would be a proper amount.

"20. Now, after you have arrived at what the Stebbins people are entitled to or the work performed on the Industrial Sites prior to the date of this contract—June 25, 1954, then you may consider another item, bearing in mind that from that date this equipment belonged to the Siegfried Company, so the Stebbins people would be no longer entitled to rental for the use

of the equipment on any yardage basis for dirt moved, but it does appear from the evidence that Mr. Barney Harrell continued to work on the job supervising it for Seigfried Company up until the Cosmo Corporation was formed—I believe that would be from June 25, 1954 to September 20, 1954—Mr. Harrell continued to render personal services to Seigfried Company and for that he is entitled to compensation. Now, he has told you that there was no definite agreement as to what he was to get except he says he was to get a drawing account against the profits, etc. On the contrary, Seigfried representatives told you that it was understood and agreed that he would draw $300.00 a month. Well, he has drawn that $300.00 a month.

"21. So, if you find that that was all he was to be paid, there is nothing on that item. But, if you find that there was no agreement, then you shall determine on a quantum meruit basis what his services were worth for that period of time, and add that to the amount that they are entitled to recover for the dirt work which began in March up to June 25, 1954."

This instruction presented every contention made by defendants; the factual matters as well as the applicable rules of law. If there was error in paragraphs 4, 5 and 6 of Instruction 1, hereinbefore referred to, such error was harmless, as the error, if any, was cured by the submission of the last quoted instructions.

The rule applied in the defendants' cited authority, Bank of Commerce of Ralston v. Gaskill, 44 Okl. 728, 145 P. 1131, holding that it is error to direct a verdict against a plaintiff when there is evidence fairly tending to support all the necessary averments of his petition entitling him to recover is not applicable herein.

■■ Thus, under all the circumstances of this case, we must apply the long established rule that in an action of legal cognizance where there is competent evidence reasonably tending to support the verdict, and no prejudicial errors of law are shown in the instructions or the rulings on law questions presented during the trial, the verdict and judgment based thereon will not be reversed on appeal. See 22 O.S.1951 § 1068, and Town of Watonga v. Morrison, 78 Okl. 74, 189 P. 737.

We, in conclusion, consider the defendants' assertion that the assignment of the government contract was null and void and that the court erred in admitting the assignment in evidence. They cite in support of this assertion 31 U.S.C.A. § 203, and General Cas. Co. of America v. Second National Bank of Houston, 5 Cir., 178 F.2d 679.

In the case at bar the United States Government had sent a check in full payment of the contract to the attorneys for the defendants, who had procured it from the government for them, and in their answer had tendered the check into court, and it was in the possession of the court clerk at the time of the trial of this case. Thus, the government has no further interest in the check or contract. This assertion or contention is untenable.

■ The provisions of the statute above referred to (31 U.S.C.A § 203) making void an assignment or power of attorney by a government contractor are for the protection of the government. See Martin v. National Surety Co., 300 U.S. 588, 57 S. Ct. 531, 534, 81 L.Ed. 822, and cited cases. Therein it was said:

"The provisions of the statute making void an assignment or power of attorney by a Government contractor are for the protection of the Government. Hobbs v. McLean, 117 U. S. 567, 576, 6 S.Ct. 870, 874, 29 L.Ed. 940; McGowan v. Parish, 237 U.S. 285, 294, 295, 35 S.Ct. 543, 59 L.Ed. 955. In the absence of such a rule, the Government would be in danger of becoming embroiled in conflicting claims, with delay and embarassment and the

chance of multiple liability. Hobbs v. McLean, supra. *But as applied to the fund in controversy, that peril is now past. The fund is in court to be distributed to rival claimants, with the Government discharged irrespective of the outcome.* The very fact that an assignment is permitted even as between the contractor and the Government itself when the warrant is outstanding, if the transfer be executed with prescribed formalities, is significant that the Government is not concerned to regulate the equities of claimants growing out of irregular assignments when collection is complete and liability is ended. *The purpose of the statute 'was not to to dictate to the contractor what he should do with the money received on his contract after the contract had been performed.'* Hobbs v. McLean, supra. A transfer of a warrant has need to be accompanied by safeguards lest the assignor may avoid it afterwards for forgery or fraud. *A transfer of the fund after payment is perfected is of no concern to any one except the parties to the transaction, and this quite irrespective of the time of the assignment or the manner of its making.*" (Emphasis ours.)

In an early case, Hegness v. Chilberg, 9 Cir., 1915, 224 F. 28, it was held that the statute which prohibits the transfer of any government contract or any interest therein by the party to whom such contract is given to any other party under penalty of annulment of the contract so far as the United States is concerned, is for the protection of the United States only, and does not affect the rights of the parties to such transfer.

For the reasons given herein, the jury verdict and judgment based thereon is affirmed.

CORN, V. C. J., and DAVISON, HALLEY, WILLIAMS and BLACKBIRD, JJ., concur.