**ELI LILLY AND COMPANY,**
Plaintiff–Appellee,

v.

**MEDTRONIC, INC.,**
Defendant–Appellant.

No. 88–1409.

United States Court of Appeals,
Federal Circuit.

July 18, 1989.

Timothy J. Malloy, of McAndrews, Held & Malloy, Chicago, Ill., argued for plaintiff-appellee. With him on the brief were Lawrence M. Jarvis and Gregory J. Vogler; of counsel were Leroy Whitaker and Bruce J. Barclay, Eli Lilly and Co., Indianapolis, Ind.

Philip S. Johnson of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, Pa., argued for defendant-appellant. With him on the brief were Gary H. Levin, Albert W. Preston and Henrik D. Parker; of counsel were Joseph F. Breimayer and John L. Rooney of Medtronic, Inc., Minneapolis, Minn.

Donald O. Beers, John Agar and David E. Korn of Arnold & Porter, Washington, D.C., were on the brief for amicus curiae, Zimmer, Inc. and Bristol–Myers Co. Also on the brief were Timothy Wendt; and Paul David Schoenle, Zimmer, Inc., Warsaw, Ind., of counsel.

Orrin G. Hatch, U.S. Senator, pro se, and Carlos J. Moorhead, U.S. Representative, pro se, Washington, D.C., were on the brief for amicus curiae.

George Gerstman, Gerstman & Ellis, Chicago, Ill., was on the brief for amicus curiae, Ventritex, Inc.

Michael I. Rackman, Barry A. Cooper and Allen I. Rubinstein, Gottlieb, Rackman & Reisman, P.C., New York City, were on the brief for amicus curiae, Telectronics, Inc. Also on the brief was William C. Nealon, of Suffield, Conn., of counsel.

CORRECTED ORDER

A suggestion for rehearing in banc having been filed in this case, a response thereto having been invited by the court and filed, and two amicus curiae briefs in support of the suggestion for rehearing in banc and two amicus curiae briefs in opposition to the suggestion for rehearing in banc having been filed,

UPON CONSIDERATION THEREOF, it is

ORDERED that the suggestion for rehearing in banc be, and the same hereby is, declined.

PAULINE NEWMAN, Circuit Judge, dissenting from the denial of rehearing in banc.

In view of the exceptional importance of the matter, Fed.R.App.P. 35, and the weight of the panel's error, I respectfully dissent from the court's denial of rehearing in banc.

The panel, reversing the judgment of the district court, held that the statutory words "drugs or veterinary biological products" include medical devices.

The statute with which the panel was dealing, as enacted in 1984, was explicitly limited to "the manufacture, use, or sale of drugs".[1] The legislative history stated:

> The purpose of Section 271(e)(1) and (2) is to establish that experimentation with *a patented drug product*, when the purpose is to prepare for commercial activity which will begin after a valid patent expires, is not a patent infringement. [emphasis added]

---

1. P.L. 98–417, codified at 35 U.S.C. § 271(e)(1): It shall not be an act of infringement to make, use, or sell a patented invention (other than a new animal drug or veterinary biological product (as those terms are used in the Federal Food, Drug, and Cosmetic Act and the Act of March 4, 1913)) solely for uses reasonably related to the development and submission of information under a Federal law which regulates the *manufacture, use, or sale of drugs.* (emphasis added) 35 U.S.C. § 271(e)(1) (Supp. II 1984).

H.R.Rep. No. 857, 98th Cong., 2d Sess., pt. 1, at 45, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2647, 2678.

By congressional action in 1988, after hearings, the statute was extended to animal drugs and veterinary biological products.[2] At the time of the panel's decision in March 1989 there was pending legislation to extend the statute to medical devices. Congress had scheduled hearings. On introducing S.622 Senator De Concini stated:

> "The 1984 law was explicit with respect to human drug products and, with the enactment of Public Law 100–670, is now explicit with respect to animal drug products. The law is not explicit with respect to medical devices and this must be clarified."

135 Cong.Rec. S2861 (daily ed. Mar. 16, 1989).

The panel held that the statute already covered medical devices.

The district court had limited the statute to its plain terms, on the multiple grounds of the clear statutory language; the definition in the Food, Drug, and Cosmetic (FFDC) Act of "drugs" as excluding "devices or their component parts or accessories"; the absence of indication in § 271(e)(1) that "drugs" was intended to be interpreted contrary to the FFDC, which Act is referred to in § 271(e)(1); the distinct procedures set in the FFDC for drugs and devices; the clarity with which Congress specified the inclusion of medical devices when such was intended; and the

legislative history that refers solely to drugs. *Eli Lilly and Co. v. Medtronic Inc.*, 5 USPQ2d 1760, 1761–62, 1987 WL 26676 (E.D.Pa.1987).[3]

In *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 456, 104 S.Ct. 774, 796, 78 L.Ed.2d 574 220 USPQ 665, 684 (1984), the Supreme Court again cautioned the judiciary that

> it is not our job to apply laws that have not yet been written.

The panel stated that it was implementing congressional "intent". It is indeed possible that Congress would have amended the statute to include medical devices. However, the legislation had not yet been enacted. It is for Congress, not the courts, to change the law for policy reasons. *Sony, supra; BankAmerica Corp. v. United States*, 462 U.S. 122, 140, 103 S.Ct. 2266, 2276, 76 L.Ed.2d 456 (1983) (the Supreme Court is not to rewrite a statute based on its notions of appropriate policy); *United States v. Great Northern Ry. Co.*, 343 U.S. 562, 575, 72 S.Ct. 985, 993, 96 L.Ed. 1142 (1952) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written").

The panel's judicial legislation has affected an important high-technology industry, without regard to the consequences for research and innovation or the public interest. Lilly, and *amici* on its behalf, observe that there are different considerations in connection with medical devices, as compared with human and animal drugs.[4] Con-

---

**2.** P.L. 100–670, the present text of 271(e)(1):

It shall not be an act of infringement to make, use, or sell a patented invention (other than a new animal drug or veterinary biological product (as those terms are used in the Federal Food, Drug, and Cosmetic Act and the Act of March 4, 1913) which is primarily manufactured using recombinant DNA, recombinant RNA, hybridoma technology, or other processes involving site specific genetic manipulation techniques) solely for uses reasonably related to the development and submission of information under a Federal law which regulates the *manufacture, use, or sale of drugs or veterinary biological products.*

(emphasis added) 35 U.S.C.A. § 271(e)(1) (West Supp.1989).

**3.** Another district court has identically interpreted the statute. *Scripps Clinic and Research Foundation v. Baxter Travenol Laboratories, Inc.*, 7 USPQ2d 1562, 1565, 1988 WL 22602 (D.Del.1988) ("It is also clear that section 271(e)(1) applies only to drugs, not to medical devices.")

**4.** It is undisputed that the Medtronic devices (cardioverterdefibrillator units) infringe the Lilly patent, that the devices are sold at $17,000 each, that eleven million dollars of infringing sales are projected through 1990, and that this activity began early in the patent life, well before patent expiration. These circumstances, while specific to the case at bar, lend weight to Lilly's position that pre-registration activity for medical devices is significantly different from that for human and animal drugs.

gress would be expected to consider the public and private economic and policy aspects of these complex industries. I can not imagine how, on the record before us, a panel of this court can decide how Congress will decide the issue. *Fedorenko v. United States*, 449 U.S. 490, 514 n. 35, 101 S.Ct. 737, 751 n. 35, 66 L.Ed.2d 686 (1981) ("It is not the function of the court to amend statutes under the guise of 'statutory interpretation' "); *Hobbs v. McLean*, 117 U.S. 567, 579, 6 S.Ct. 870, 875, 29 L.Ed. 940 (1886) ("When a provision is left out of a statute either by design or mistake of the legislature, the courts have no power to supply it. To do so would be to legislate, and not to construe.") Yet the panel concluded not only that Congress intended to view these industries in exactly the same way, but that this intent was already enacted into law.

This is not a matter of imprecise or ambiguous words. The clarity of the words is unchallenged. Scant respect has been accorded our admonition in *Roche Products, Inc. v. Bolar Pharmaceutical Co., Inc.*, 733 F.2d 858, 865, 221 USPQ 937, 942 (Fed. Cir.), *cert. denied*, 469 U.S. 856, 105 S.Ct.

183, 83 L.Ed.2d 117 (1984), wherein this court wrote:

> No matter how persuasive the policy arguments are for or against these proposed bills, this court is not the proper forum in which to debate them. Where Congress has the clear power to enact legislation, our role is only to interpret and apply that legislation.

\* \* \* \* \* \*

The Federal Circuit has a role in our judicial system that is unique among the circuits, in that our decisions are of national effect. There rests upon us a special responsibility, for there is no other forum in which litigants may seek a different result. We must be vigilant to our own errors, and receptive to self-correction. Both the principle, and the specific question here raised, are of exceptional importance, and require rehearing by the full court.

---

I remark on the anomaly whereby sales of unregistered medical devices may now be deemed non-infringing for as long as they are unregistered. This curious outcome would surely have been explored at congressional hearings.