# Rea, Trustee, Appellant, *v.* Pennsylvania Canal Company.

*Contracts—Corporate mortgages—Bonds—Agreement to purchase coupons—Construction of contract — Equity — Maxims— "Equity considers that as done which ought to have been done"— Contemporaneous construction—Unambiguous contract.*

1. The maxim, "Equity considers that as done which ought to have been done," is of much more limited application than its terms would suggest. It presupposes a contract under which a party would have had a benefit from something which it was agreed should be done, but which was not done. In such case there is an equitable right to have the case considered as if the thing contracted for had been done. But in the application of this principle the court is not at liberty to go beyond the sphere of contract relation created by the parties. Courts cannot make for them an agreement into which they have not entered.

2. Where an agreement is stated in clear and unambiguous language, so that there is no uncertainty as to the sense of the language which was used, there is no room for the consideration of any contemporaneous construction by the parties.

3. In a proceeding in equity by the trustee of bondholders under a corporation mortgage to foreclose the mortgage and make distribution of the proceeds of sale of the mortgaged premises, in which certain bondholders were intervening defendants, a decree awarding priority to the bonds over certain coupons was reversed where it appeared that the bonds in question to the amount of $3,000,000 had been issued on July 1, 1870, on the property of a canal company, and contained endorsed thereon an agreement by a railroad company that in case of the failure of the canal company to pay the interest coupons then the "railroad company will

purchase the said coupons at their par value from their respective holders on presentation thereof"; that in pursuance of a reserved power in the mortgage the canal company had from time to time sold portions of its property to the railroad company, the proceeds of which sales were used by the canal company in the purchase and cancellation of bonds; that the canal company paid the interest coupons until July 1, 1888, but after that date the holders of coupons were told to take them to the railroad company which would purchase them; that upon presentation to the latter, an agreement was presented to and signed by the person offering the coupon, setting forth that the coupons were being sold to the railroad company and agreeing that the coupons so sold should continue in full force and validity as against the canal company, which transaction continued for a period of twenty-two years. In such case, the railroad must be regarded as a purchaser of the interest coupons and the coupons so purchased are entitled under the terms of the mortgage to priority of lien over the bonds and to prior recognition in the distribution of funds arising from the sale of the mortgaged premises.

4. In such case, the fact that the resolution of the railroad company authorizing such agreement to purchase made reference to the transfer of collateral security, "all of which shall be held as indemnity against loss under the guarantee above provided for" is immaterial as the use of the word "guarantee" in this connection did not have and could not have the effect of turning an agreement to "purchase" the coupons into an agreement to "pay" them for the purpose of extinguishment or cancellation.

MR. JUSTICE MESTREZAT dissents.

Argued Mar. 23, 1914. Appeals, Nos. 347 and 348, Jan. T. 1913, by Samuel Rea, Trustee, and the Pennsylvania Railroad Company, from decree of C. P. No. 5, Philadelphia Co., Dec. T., 1910, No. 4799, making distribution in case of Samuel Rea, Trustee, v. Pennsylvania Canal Company, John Cadwalader, Jay Cooke, 3d, Edward Bailey, Donald McCormick, Henry S. Rich, William F. Norris, and The Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, and MOSCHZISKER, JJ. Reversed.

Bill in equity to foreclose a mortgage and to fix the order of distribution of the funds. Before RALSTON, J.

The opinion of the Supreme Court states the facts.

The court awarded foreclosure and decreed that the holders of bonds were entitled to priority in the distribution of the fund created by the sale of the mortgaged premises in preference to the Pennsylvania Railroad Company as the holder of coupons purchased by it. Samuel Rea, Trustee, and the Pennsylvania Railroad Company appealed.

*Errors assigned* were various findings of fact and law and the decree of the court.

*John G. Johnson,* for Samuel Rea, Trustee, with him *Francis I. Gowen,* for Pennsylvania Railroad Company, appellants.—By the endorsement which it put upon the bonds of the Pennsylvania Canal Company, the Pennsylvania Railroad Company undertook, in the event of the canal company's default, to purchase, not to pay, the coupons representing the interest on the bonds: Real Estate Trust Co. v. Pennsylvania Sugar Refining Co., 237 Pa. 311.

When the canal company defaulted on the coupons, these were purchased, pursuant to its endorsement, by the Pennsylvania Railroad Company, the owners and holders from whom they were acquired expressly agreeing that in the hands of the railroad company the coupons should continue obligations of the canal company, and be entitled to the benefit of the mortgage security to as full an extent as when they were in the hands of such owners or holders.

Even if the endorsement which the Pennsylvania Railroad Company placed upon the bonds is a guarantee of the payment of the coupons thereof, the overdue coupons held by the Pennsylvania Railroad Company are entitled to payment out of the proceeds of the mortgaged premises prior to the payment of principal of the bonds, as provided in the mortgage: Com. of Va. v. Chesapeake & Ohio Canal Co., 32 Md. 501; Zeller v. Henry, 157 Pa.

1; Stewart v. Stewart, 207 Pa. 59; Lloyd v. Galbraith, 32 Pa. 103; Knouf's App., 91 Pa. 78.

The priority of charge against the mortgaged premises conferred by the terms of the mortgage extends to the proceeds of any part of the mortgaged estate in the hands of the trustee that may have been converted into cash through the sale, pursuant to the terms of the mortgage, by the mortgagor or portions of the mortgaged premises.

*Thos. Raeburn White,* with him *William F. Norris, Robert D. Jenks, John Cadwalader, Jr.,* and *William A. Glasgow, Jr.,* for appellees.—The following cases disclose the circumstances under which the courts will debar an alleged purchaser of coupons from participation in the fund and we submit should rule this case: Child v. N. Y. & New England Railroad, 129 Mass. 170; Wood v. Guarantee Trust Co., 128 U. S. 416; Baker v. Meloy, 95 Md. 1; Cameron v. Tome, 64 Md. 507; Fidelity Ins. Trust & Safe Dep. Co. v. Railroad Co., 138 Pa. 494; Venner v. Farmers' Loan & Trust Co., 90 Fed. 348; Farmers' Loan & Trust Co. v. Iowa Water Co., 78 Fed. 881; Union Trust Co. v. M. & P. J. Ry. Co., 63 N. Y. 311; Martin v. Bank, 94 Tenn. 176; Morton Trust Co. v. Home Telephone Co., 66 N. J. Eq. 106.

The conclusion of the lower court that as between the railroad company and the bondholders the transaction must be deemed a payment is fully sustained by the evidence: United Water Works Co. v. Farmers' Loan & Trust Co., 82 Fed. Repr. 144; Venner v. Farmers' Loan & Trust Co., 90 Fed. Repr. 348; Pearce v. Bryant Coal Co., 121 Ill. 590; Baker v. Meloy, 95 Md. 1; Russell v. Drummond, 6 Ind. 216; Fuller v. Bennett, 55 Mich. 357; Coykendall v. Constable, 99 N. Y. 309; Armour Packing Co. v. Davis, 118 N. C. 548; Hazlett v. Commercial National Bank, 132 Pa. 118; First National Bank of Clarion v. Gregg, 79 Pa. 384.

The contract of the railroad company with the bondholders was essentially a guarantee that the interest

would be paid, and it must be deemed to have paid the
coupons when it acquired them in pursuance of its con-
tract: Johnston v. Chapman, 3 P. & W. 18; Brown v.
Brooks, 25 Pa. 210; Reigart v. White, 52 Pa. 438; Mc-
Millin v. Titus, 222 Pa. 500; Gillespie v. Iseman, 210 Pa.
1; Collision v. Philadelphia Co., 233 Pa. 350; Gass's
App., 73 Pa. 39.

Declarations of the company, especially when contain-
ed in formal resolutions and in published reports which
were intended to reach the public including the bond-
holders should be given due weight in determining what
the meaning of the contract really is: Colder v. Weaver,
7 Watts. 466; Lehigh Coal & Navigation Co. v. Harlan,
27 Pa. 429; Gillespie v. Iseman, 210 Pa. 1; McMillin v.
Titus, 222 Pa. 500.

The contract should be construed in the sense in which
the person making the promise believed the other party
to have accepted it: Burkhard v. Travelers' Ins. Co.,
102 Pa. 262.

The terms of this contract must be construed most
strongly against the party who framed it, and if there be
any doubt as to its meaning that doubt must be resolved
in favor of the bondholders: Taylor v. Smith, 2 Whar-
ton, 432; Beeson v. Patterson, 36 Pa. 24; Burkhard v.
Travelers' Insurance Co., 102 Pa. 262; Allentown School
District v. Derr, 115 Pa. 439; McMillin v. Titus, 222 Pa.
500; Scheffield Water Co. v. Elk Tanning Co., 225 Pa.
614, 623-624; Collison v. Philadelphia, 233 Pa. 350, at p.
353; Wilson v. Peerless, 240 Pa. 473; Noonan v. Brad-
ley, 76 U. S. 394.

The coupons detached from bonds formerly owned by
the Pennsylvania Railroad Company, or attached to
bonds now owned by it, are in no better position than the
other coupons.

The cash derived from sales of portions of the mort-
gaged premises during the term of the mortgage are ex-
clusively applicable to the payment of the bonds: Dun-
ham v. Railway Co., 68 U. S. 254.

OPINION BY MR. JUSTICE POTTER, July 1, 1914:

This was a bill in equity, filed by Samuel Rea, trustee for bondholders, under a mortgage executed by the Pennsylvania Canal Company. The bill prayed for foreclosure, and for instructions as to the distribution of the proceeds of sales of the mortgaged premises. The defendant, the Pennsylvania Canal Company, in its answer admitted all the allegations of the plaintiff's bill, and submitted itself to the decree of the court. Mr. John Cadwalader and others, intervened as defendants to protect themselves as the owners of certain bonds of the Pennsylvania Canal Company. Certain pertinent findings of fact by the court below, may be stated as follows: The Pennsylvania Canal Company being empowered to issue bonds under its charter to the amount of $5,000,000 duly issued bonds to the amount of $3,000,000. These bonds were endorsed, in pursuance of a resolution adopted by the Board of Directors of the Pennsylvania Railroad Company, which reads as follows: (June 30, 1870) "Resolved, that the Pennsylvania Railroad Company will agree to purchase the interest coupons of $3,000,000 of the general mortgage bonds of the Pennsylvania Canal Company—said bonds being intended to retire the $2,367,000 existing debt of the Canal Company; to pay $103,000 for the Hazard Coal Property, as contracted to be paid by the Canal Company; to pay $200,000 for the contemplated enlargement of the canal this year; and the balance of said $3,000,000 to be used for future enlargement; Provided, the Pennsylvania Canal Company transfer to the Pennsylvania Railroad Company, as collateral security, all their rights and interest, directly or indirectly, in their coal properties, and all stock of coal companies owned by them, all of which shall be held as indemnity against loss under the guarantee above provided for. This being done, then the following endorsement to be placed on the said $3,000,000 of bonds: 'For a valuable consideration the Pennsylvania Railroad Company by resolution of the Board of Directors

thereof dated the thirtieth day of June, A. D. 1870, has agreed with the respective holders of the issue of bonds of the Pennsylvania Canal Company, dated July 1st, 1870, of which bonds the within is one, there being two thousand nine hundred and ninety-nine (2,999) others, differently numbered but of like date, tenor and amount —that in case the said Pennsylvania Canal Company, their successors and assigns, shall fail to pay the interest coupons thereto attached when and as the same may mature, or within thirty days afterward respectively, that then the said Pennsylvania Railroad Company will purchase the said coupons at their par value from their respective holders on presentation thereof.' " Under the mortgage there was reserved to the canal company the right to sell any part of the mortgaged premises, at any time, free from the lien of the mortgage, provided it used the proceeds for the benefit of the bondholders, or in the purchase of some of the bonds secured by the mortgage. Under this power the canal company sold from time to time, portions of its property to the Pennsylvania Railroad Company. The proceeds of these sales were used by the canal company in the purchase and cancellation of bonds of the canal company, which bonds were at the time, the property of the Pennsylvania Railroad Company. The canal company paid the interest coupons until July 1, 1888. After that date the holders of coupons, or their representatives who came to collect the coupons, were told to take them to the Pennsylvania Railroad Company, which would purchase them. Upon presentation at the offices of the Pennsylvania Railroad Company, an agreement was presented to and signed by the persons offering the coupons, setting forth that the coupons were being sold to the railroad company, and agreeing that the coupons so sold should continue in full force and validity as against the canal company.

The plaintiff as trustee has a fund of $433,014.74 in his hands, for distribution, and has also the property of the canal company, which remains unsold. The holders of

858 bonds have intervened to protect their interests. The Pennsylvania Railroad Company holds coupons which it has bought to the amount of $3,116,400. These were obtained in several ways: (a) by purchase on presentation for payment; (b) those coupons still attached to the bonds belonging to the Pennsylvania Railroad Company, and (c) those coupons unpaid, which were clipped from bonds by the Pennsylvania Railroad Company, to facilitate the sale of the bonds to outsiders. The Pennsylvania Railroad Company claims priority as regards these coupons, over the principal of the bonds, on the fund for distribution, and on any fund realized from the sale of the property covered by the mortgage. The court below, as a matter of law, reached the conclusion, that the endorsement of the bonds by the Pennsylvania Railroad Company, as above described constituted a guarantee of the payment of the interest of the bonds, and that as against the bondholders, the coupons in the hands of the Pennsylvania Railroad Company are to be considered as having been paid, and not as having been purchased by the railroad company. The correctness of this view is the principal question here involved. In reaching his conclusion, the trial judge was evidently moved by the ethics of the case. He noted from the record, that the canal company was to all intents and purposes merely a department of the railroad company, and that the management of the canal company was entirely within the control of the railroad. He saw that the latter had from time to time taken over upon terms arranged to its own satisfaction, the property of the canal company, which was covered by the mortgage, and it was difficult to see why in fairness and justice, provision should not have been made for the payment of the bonds, which had been placed upon the property with the full knowledge and consent of the railroad company, and which had been issued under an agreement with the railroad company, by which it bound itself to purchase the interest coupons at par, in case the canal company

failed to pay them. It is not strange that the court be-
low felt strongly disposed to apply the maxim, "Equity
considers that as done, which ought to have been done."
But this maxim is of much more limited application
than its terms would suggest. It presupposes a con-
tract, under which a party would have had a benefit
from something which it was agreed should be done, but
which was not done. In such case there is an equitable
right to have the case considered as if the thing con-
tracted for, had been done. But in the application of
this principle, we are not at liberty to go beyond the
sphere of contract relation created by the parties. We
cannot make for them an agreement, into which they
have not entered.

The question therefore, which is here presented to us
for consideration, is not what the railroad company
under the circumstances ought to have done with the
coupons, but it is, what did it agree to do, and what as a
matter of fact, did it do in taking the coupons over?
Did it on behalf of the canal company pay the coupons,
with a view to their extinguishment, as a claim under
the mortgage, or did it purchase them, with the right
to hold them under the continued security of the mort-
gage, with the same right to priority of payment, which
the coupons would have had in the hands of the bond-
holders? It is clear that the railroad company did not
take over the coupons without having an agreement or
stipulation as to the nature of the transaction. And this
stipulation was expressed in very definite language, in
which we can discover no ambiguity. The obligation
which the railroad company intended to assume, and
which it did assume, appears first, in the resolution of
its board of directors, in which it is distinctly set forth,
that the railroad company will purchase the interest
coupons, upon certain conditions. The squarely defined
intention to purchase, again appears in the endorsement
upon the back of the bonds, in which is reiterated the
statement, "in case the said Pennsylvania Canal Com-

pany, their successors and assigns shall fail to pay the interest coupons thereto attached, or as the same may mature, or within thirty days afterward respectively, that then the said Pennsylvania Railroad Company will purchase the said coupons at their par value from their respective holders on presentation thereof." This was the contract with the bondholders, which went into the hands of each bondholder, and which stared him directly in the face. He saw before him, endorsed upon the bond as he took it, a statement, not that the railroad company would pay the coupons and take them over for extinguishment, but that it would hold itself ready upon presentation, to purchase the interest coupons if not paid by the canal company. It is common knowledge that interest coupons are passed from hand to hand, and that the title to them passes by mere delivery. A transfer of possession is presumptively a transfer of title. The railroad company was under no legal obligation to purchase these coupons, except upon the exact terms set forth in the written agreement, by which it bound itself to make the purchase. In strict accordance with that agreement, is the writing signed by the holders of coupons at the time when they presented them to the railroad company, in which it is stated that in pursuance of the endorsement upon the said bonds, they did sell and deliver to the Pennsylvania Railroad Company the said coupons; and it was further agreed, that the coupons so sold as aforesaid, shall continue in full force and validity, and remain and be a debt secured by the said mortgage. How could it be possible to set forth more clearly, or in plainer language, the intent of the railroad company to purchase the coupons in question, and the intention of the holders of the coupons to make sale of the same to the railroad company? Had there been but a single transaction of the kind, some excuse might have been made for a failure to take note of the terms of purchase which were so clearly set forth both in the endorsement upon the bonds, and in the writing which was

signed when the coupons were sold and set over to the railroad company. But when it is remembered that twice each year, for a period of twenty-two years, the coupons were thus presented to, and purchased by, the railroad company, no good or sufficient reason appears for a failure to understand the terms of the transaction. There was no compulsion upon the part of any bondholder, to part with his coupons upon these terms. It must of course be admitted that the parties had the right to make their own contract, and to say for themselves what they would do. In unmistakable terms, the railroad company agreed to purchase the coupons, which involved the right upon its part, to retain them, in reliance upon the security of the mortgage. It did not agree to pay the coupons, or to take them upon terms that implied their extinguishment, as a claim under the mortgage.

In the argument of counsel for appellees, some stress is laid upon the language of the proviso, in the resolution of the railroad company, in which reference is made to the transfer of collateral security, "all of which shall be held as indemnity against loss under the guarantee above provided for." The transaction to which reference was thus made, was the agreement to purchase the interest coupons. It was this agreement, to which the board referred as "the guarantee above provided for." This reference can have no effect whatever upon the terms of the agreement. These terms were in no way enlarged by the use of the word "guarantee" in referring to them in this matter. The use of this word "guarantee" in this connection, did not have, and could not have, the effect of turning an agreement to "purchase" coupons, into an agreement to "pay" them, for the purpose of extinguishment, or cancellation. Counsel for appellees have not cited to us, nor have we been able to discover any decision, in which a court has ever undertaken to construe a plain agreement to purchase coupons, as being the equivalent of a contract to pay them, for the purpose of extinguishment.

A portion of the able argument of counsel for appellees, is based upon the hypothesis, that the resolution of the railroad company, which embodies the contract with the bondholders, is ambiguous. But as we have already said, we find no uncertainty of meaning in the language of the resolution, or in that of the endorsement which was placed upon the bonds. The agreement upon the part of the railroad company was clearly stated, as being one to purchase the interest coupons; it was not an agreement to pay them, with a view of extinguishment. In the absence of any uncertainty as to the sense of the language which was used, any argument based upon contemporary construction by the parties, has no application to the present case.

It appears also, that it was contemplated in the resolution, that collateral to protect it from loss in the purchase of the coupons, should be transferred to the railroad company. If this had been done, the collateral should have been accounted for, and the proceeds of anything so received should have been applied to the claim upon the coupons. But this feature disappears from the case, under the stipulation of counsel, by which it was agreed that no transfer of coal properties, or stock of coal companies, owned by the canal company, was made to the railroad company as collateral security, as was contemplated in the resolution. Under the plain terms of the agreement, and under the undisputed facts of the transaction, we cannot regard it as anything else than a purchase of the interest coupons. It follows that the coupons so purchased, were entitled under the terms of the mortgage to priority of lien over the bonds, and to prior recognition in the distribution of the funds arising from the sale of the mortgaged premises.

The first, second, third, fourth, fifth, sixth, seventh, ninth, tenth, and eleventh assignments of error are sustained. The decree of the court below is reversed, and the record is remitted for further proceedings in accordance with this opinion.

MR. JUSTICE MESTREZAT dissents.