BROWN et al. v. PENNSYLVANIA CANAL CO. et al.

(District Court, E. D. Pennsylvania. August 22, 1917.)

No. 677.

1. CORPORATIONS ⟨⟩486—MORTGAGES—CONTRACT WITH BONDHOLDERS OF SUB-SIDIARY CORPORATION.

A canal company, organized and controlled by a railroad company, issued mortgage bonds upon which the railroad company indorsed an agreement to purchase such interest coupons as should not be paid at maturity by the canal company. The mortgage provided that from its net income the canal company should first set aside $20,000 annually, if the income amounted to so much, as a sinking fund for the payment of the principal of the debt, to be invested in the bonds or other good securities. In a foreclosure suit it was adjudged that the unpaid coupons, including those purchased and held by the railroad company, were entitled to priority of payment over the principal of the bonds from the proceeds of the mortgaged property. In a subsequent suit by bondholders it was found that net income which by the terms of the mortgage should have been paid into the sinking fund had been diverted to the payment of coupons, relieving the railroad company to that extent from its agreement to purchase the same, and the railroad company was required to restore such sums. Held, that such restored fund was applicable, first, to the principal of the bonds for whose payment it was created.

2. CORPORATIONS ⟨⟩486—MORTGAGES—SINKING FUND—DISTRIBUTION.

As the sinking fund was created for the benefit of the bondholders as a class, all bonds, including those held by the railroad company, were entitled to share in the restored fund.

3. CORPORATIONS ⟨⟩486—MORTGAGES—SUIT TO RECOVER SINKING FUND—EX-PENSE OF RECOVERY.

The suit having been brought by one bondholder, for the benefit of all who might come in and share in the expense, to compel a restoration of the money diverted from the sinking fund, the railroad company, although the defendant from whom the fund was recovered, could only come in as a distributee on payment of its share of the expense of recovery.

4. CORPORATIONS ⟨⟩482(9)—REPRESENTATIVE SUIT BY BONDHOLDERS—COUN-SEL FEES.

The allowance by the master of a fee to complainant's counsel, based on the entire amount which the decree required the railroad company to restore to the sinking fund, held excessive, where about one-fifth of the bonds were owned by the railroad company, and hence were not really in controversy.

In Equity. Suit by Alice F. Brown and others against the Pennsylvania Canal Company and others. On exceptions to master's report. Sustained in part.

See, also, 229 Fed. 444.

Thomas Raeburn White, of Philadelphia, Pa., for plaintiffs.

John Hampton Barnes and Francis I. Gowen, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The admirable discussion at bar of the questions presented to us in this case was based upon an analysis of the case so clear and satisfactory that the statement of what questions are now involved given to us in the discussion may be followed as complete. The report of the master is of such satisfactory full-

ness that nothing more than a statement of the conclusions reached is demanded of us.

[1] 1. The first question is that of the priority of interest over principal in payment out of the fund in court. Wrapped up in this is the query of whether this question is still an open one. We need not trouble ourselves with this latter question, because, if the door has closed, it has closed upon the exceptants, and if the finding of the master be correct, whether the ruling be that the question has been adjudicated in favor of the plaintiffs, or should be so determined, is of no practical importance. Assuming that the decree of the Circuit Court of Appeals was not the equivalent of a technical judgment upon this issue as now raised, it was decreed that the Pennsylvania Railroad Company should pay to the trustee under the mortgage, appointed by the decree to be the receiver of the fund, a sum of money equal to the sum which measured the extent to which the sinking fund had been depleted by what was done and what was omitted to be done. The ruling which resulted in this decree was expressly based upon the finding that the meaning of the agreement entered into was that prospective purchasers of the bonds of the Canal Company were assured of the prompt receipt of the interest which became due them through and by the obligation of the railroad company to purchase the coupons and were further assured of the payment of the principal of the bonds through and by the accumulation in the sinking fund of moneys (deemed to be sufficient) for this purpose.

The effect of the covenants of the mortgage, considered without any reference to the collateral agreement to which the Railroad Company was a party is one thing; the effect of this collateral agreement with respect to the rights of the parties affected by it is another thing. Accepting, as we do, the ruling of the state court (Rea v. Penn. Canal Co., 245 Pa. 589, 91 Atl. 1053) in the proceedings upon the mortgage, we are bound to conclude that under the terms of the mortgage the interest coupons have priority of payment over the principal of the bonds in the distribution of the proceeds of the mortgaged premises sold as the property of the Canal Company and as against the Canal Company. To hold, however, that the Railroad Company, in an action against it arising under the collateral agreement, is entitled as a purchaser of the coupons to a like priority of payment over the bondholders, would be to deny the soundness of the reasoning upon which the ruling already made in this case proceeded. This is clearly so because, treating the Railroad Company as the actor, the ruling that the company could not deduct interest from the earnings before paying $20,000 thereout into a sinking fund for the benefit of the bondholders, and then to rule that it might take this same money out of the sinking fund to pay the interest in preference to the bonds, is to make inconsistent rulings, the latter of which nullifies the former. The master was therefore, we think, entirely right in holding (whether the question was strictly res adjudicata or not) that the ruling already made, which resulted in the creation of this fund, compels the ruling that the fund created for the payment of the bonds cannot be diverted to the payment of the coupons.

[2] 2. Upon the second question we think the master to be also right. The covenant of the Railroad Company (still regarding it as the actor) was to create this annual $20,000 contribution to the sinking fund for the benefit of the bondholders as a class. There is no distinction made among the members of the class, and no convincing reasons advanced for not treating all the outstanding bonds as on the same footing. What bonds are outstanding and the holders thereof are questions wholly dependent upon the facts as they are found to be, and the master was the duly constituted tribunal to make these findings.

[3] 3. We think the master to be further right upon the third question, so far as affects the principle involved, although his ruling may be subject to modification in the application of the principle. We can contribute nothing of value to the discussion of the broad question contributed by the master and counsel. A few general observations may aid in clarifying our view of the broad equities arising out of the situation. Whatever might be said in support of the merits of the claim that a party who has been found to be entitled to redress for an injury should be awarded that redress, undiminished by the expense of securing it, there has in this jurisdiction never been given an allowance for such expense beyond the award of certain costs in addition to the redress awarded. That one member of a class, who shares in the fruits of a litigation carried on by another member for the benefit of the whole class, should contribute proportionately to the expense incurred, is a proposition which has so far been given judicial sanction as to have ripened into an accepted equitable principle. It may be planted upon an acceptance of the proffer made in bills of this kind (as was in fact made in the bill filed in this case) that any bondholder might become a party to the bill (which all of them have now in effect done) by contributing to the expense incurred by the original plaintiff. It may be rested on the broad ground that every member of the class has benefited.

We can easily enter into, and to that extent sympathize with, the feeling almost of resentment with which a defendant who had been compelled to pay money as a result of an action against him entertains, if it is suggested that he should contribute to the expense incurred by the plaintiff on the ground that the defendant had profited by the litigation. Such is the feeling of the Railroad Company in this case, and it must be admitted that from its point of view there is justification, or at least provocation, for the feeling. Room for the two points of view is afforded by the circumstance that the Railroad Company occupies a dual position. It is a bondholder for whose benefit this sinking fund provision was made in the collateral agreement. It is the one indirectly receiving the moneys which should have gone into the sinking fund, and, because of this, the one required to replace the moneys. If it had been wholly a bondholder, its liability to make contribution would not be denied. If it were wholly a defendant, such liability would not be asserted. It seems like a very narrow and technical ground upon which to base a ruling; but at the same time the position likewise seems to be one of compulsion that the question

must be determined according to the character of the Railroad Company at the time of the ruling, and at this time the Railroad Company is wholly a bondholder and distributee, and its character as a defendant is gone.

No one except the bondholders who were injured had a right of action against the Railroad Company for the diversion of the earnings of the Canal Company from the sinking fund, and, of course, it could not be said that the Railroad Company had injured itself. The action or proceeding might therefore have taken a course resulting in a judgment or decree that the injured bondholders recover the amount of the injury from the Railroad Company. The sum thus recovered they would have received, and would perforce have borne the whole expense themselves. The proceedings did not, however, take this course, but resulted in the creation of a fund to which likewise perforce the Railroad Company must resort, asking to share in the distribution as a bondholder. The different situation brings the like further consequence that all the bondholders share alike. As a bondholder the company is within the admitted principle of contribution, being one of those having "a similar interest in the subject-matter of the litigation." We are not concerned with them in any other character, and evidence of who are distributees of this fund is restricted to showing who are bondholders. The view taken by the master is, we think, unaffected by the comments quoted by defendant from Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940, or Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157.

[4] 4. The fourth question relates to the sum allowed counsel for plaintiff. As between counsel and client, it cannot be denied that the services rendered call for the fullest measure of compensation, limited only by what is just and reasonable. Just what sum measures this is a fact conclusion. What mete wand should be applied is a question of law. The result of the measuring is a fact. One of the elements which enters into the selection of the measuring rod is that of the size of the fund involved. Because of this, the measuring is frequently and properly done on a percentage basis. So far as the question before us is one of fact, the finding is based upon evidence consisting of testimony which is uncontradicted and which has been considered and weighed by the Master. There is concord upon the fact that the allowance made is large. This does not help us, because in the opinion of the plaintiff it ought to be large, and the exceptant has characterized it as "excessive." Criticism of an allowance as too large, unsupported by either evidence or suggestion of what a fair allowance would be, is not of much practical aid to any one whose duty it is to make a proper allowance. The master has allowed a sum which is the equivalent of slightly less than 13 per cent. of the whole fund found for distribution, exclusive of the interest accumulations. The latter is likely to be a considerable sum before this litigation is ended. In the view of the master, no client could reasonably complain of litigation charges which left him over 87 per cent. of his full claim, with interest accumulations added. The conclusion reached by him is more than supported by the evidence of what reasonable compensation to counsel would be.

A finding thus supported, with absolutely nothing to challenge its correctness, or by which to correct it, if thought to be excessive, we do not feel justified in disturbing.

It only remains, therefore, to apply it to the amount or sum really in controversy. The master has applied this percentage to the whole fund (less interest), or nearly $2,000,000. The total number of bonds outstanding, and prima facie having the right to share in the distribution, is 1,948. The contest waged, however, was waged on behalf of 1,564 only of these bonds; 384 of them being held by the Railroad Company. Even though the course of the proceeding was such as that the 384 shares figured in the recovery, and to this extent increased the total sum of the fund, the injury was an injury to the holders of the 1,564 shares, and the recovery was of the sum due them, and the 384 shares were no part of the sum "really in controversy." The sum thus really in controversy enters into the measure of compensation, unincreased by the sum which was due by the Railroad Company to itself. The allowance made by the master of counsel fees on the basis of the whole fund, rather than on the actual recovery, has much to support it, because it seems to be a logical corollary of the finding that the whole fund should contribute. The two thoughts seemingly move in opposition and in apparent conflict. We think, however, that, although they move in opposite directions, there is room for them to pass without collision. The case is somewhat analogous to that of a successful ejectment litigation waged to recover a four-fifths interest in a real estate property, the entire interest in which must be brought into the case for partition and distribution purposes. Accepting the finding made by the master on the changed basis of calculation, the allowance should be reduced from $250,000 to $200,000, and to this extent the exceptions are sustained.

The foregoing disposes, so far as concerns this court, of the exceptions filed on behalf of the Railroad Company. In discussing those filed on behalf of the plaintiff, we will again follow the order of questions into which the exceptions have been analyzed by counsel.

The key to the answer to the first question, raising the inquiry into the status of the Railroad Company as a bondholder, is to be found in this: The fund is the property of the Canal Company. It has, it is true, been set aside for the benefit of the bondholders; but this title is that of the bondholders as a class, and not the plaintiff or any particular bondholder. Every bondholder, it is true, has the right to resist his share being diminished by the participation of any one who is not a bondholder; but who is and who is not a bondholder is to be determined, as between the Canal Company and the claimant, and unless his status as a bondholder can be denied, his right to participate as such cannot. We see no wrong to any bondholder in the Canal Company directly or indirectly borrowing money to meet its interest obligations, or in issuing bonds therefor; nor do we see the right of any bondholder to complain if the Canal Company had issued bonds in payment of any indebtedness. This is predicated, of course, upon the silence of the mortgage contract. It is not intended by the presentation of this view to draw in question the correctness of the findings of the master upon

this branch of the case, but, on the contrary, to buttress them by supporting his conclusion in any event. The above propositions are accepted by counsel for plaintiff. They urge, however, that what was done "was in violation of the railroad's contract with the bondholders." The answer is summed up in a question, "Wherein?"

The remaining contention, that the costs of the reference should be imposed "in whole or in part" upon the Railroad Company, is met as to the latter by the observation that by placing the costs upon the fund the Railroad Company does pay the costs in part. The suggestion of a finding that the reference to a master was at the instance of the defendant we cannot accept. The reference grew out of the necessities of the case, and was fully justified by rule 59 (198 Fed. xxxv, 115 C. C. A. xxxv). The slightest glance at the voluminous report of the master is sufficient to show that it would have been utterly impracticable for the court to have made the investigation into which the master has gone. There would be no justification whatever for imposing costs upon the defendant. The other matters affecting the costs of the reference we will not dispose of, until we learn whether counsel wish to be heard thereon. If so, the hearing may take place at any time. If no further hearing is desired, the remaining questions will be disposed of at once. The fund awaiting distribution is large, and counsel are invited to suggest any practicable method which may occur to them of making a partial distribution now, reserving such sum as will protect the parties in the assertion of their appellate rights.

A formal decree may be submitted, embodying the conclusions hereinabove stated.