[Civ. No. 6688. Second Appellate District, Division Two.—June 27, 1931.]

FLOID S. DAY, Appellant, v. LAGUNA LAND & WATER COMPANY (a Corporation) et al., Respondents.

James Westervelt and Clarence A. Singer for Appellant.

Biby & Biby and John E. Biby for Respondent.

ARCHBALD, J., *pro tem.*—Action was brought by plaintiff against the defendant corporation and certain of its stockholders for the recovery of the reasonable value of services alleged to have been rendered as an income tax expert in resisting a claim of the government for additional income taxes for the years 1918 to 1922 inclusive, which services, it is alleged in the first count, resulted in a saving to the defendant corporation of the sum of $32,820.78, and in the second count a similar saving of $45,167.84. The case was tried before a jury. It appears that plaintiff was employed for several years by the government as an internal revenue agent and income tax auditor; that he was asked by his department to investigate the defendant corporation to see if the proper amount of income tax had been paid for the years 1918 to 1922 inclusive; that he first met the secretary of the corporation November 9, 1923, at which time the plaintiff had already sent in his resignation to the government, effective November 30, 1923; that he began such investigation, which "had reached only the preliminary stage" when his resignation became effective and he was relieved by an agent named Sullivan, thereafter entering private practice. Subsequently, and on December 2d or 3d, he was given the job of preparing the income tax return of defendant corporation for the year 1923. About January 28, 1924, the report of the agent Sullivan recommending the levy of additional taxes was shown plaintiff by the secretary of defendant corporation, with the result that he was employed, according to his testimony, to ascertain if they could "justly claim relief" from such additional tax, on a contingent basis of "no saving, no fee". Asked what he meant by "no saving", plaintiff answered: "No reduction in tax." It also appears that plaintiff told the secretary that he "could not

appear before the department in person" to argue the case, as "I had just quit—having just quit—I had not obtained a permit to practice; that I could prepare the protest but that he, Mr. White, would have to appear in the conference and do the talking, arguing the matter as I might have presented it to him".

At the close of plaintiff's evidence a nonsuit was granted upon motion of defendant. The only reference to said motion and the action of the court thereon in the record before us is in the judgment, which recites that "after the plaintiff had rested his case counsel for said defendants moved the court to nonsuit the plaintiff and render judgment in favor of defendants upon the grounds following: . . . Said motion was thereafter argued and submitted to the court for consideration, and due deliberation having been had thereon, the said motion was granted and judgment ordered in favor of said defendants and against said plaintiff", and adjudges that plaintiff take nothing by reason of his complaint and that defendants have judgment for their costs and disbursements. From such judgment plaintiff has appealed.

The points evidently argued most strenuously on the motion for nonsuit were: Variance between the allegations of the complaint and the evidence received in support thereof, and that the contract sued upon is prohibited by express mandate of the law as well as being contrary to the policy of express law, and is therefore void. Appellant contends: (1) that the contract is not prohibited by any mandate of law nor contrary to the policy of the law; (2) that it was error to admit any evidence of Treasury Department Circular No. 230, and (3) that there is no variance between the pleading and the proof.

(1) Appellant urges that section 190 of the Revised Statutes of the United States (5 U. S. C. A., sec. 99), which respondent, the defendant corporation, maintains made void the contract in question, is not applicable. Such section reads: "It shall not be lawful for any person appointed after the 1st day of June, 1872, as an officer, clerk, or employee in any of the departments, to act as counsel, attorney or agent *for prosecuting any claim against the United States* which was pending in either of said departments while he was such officer, clerk or employee, *nor in any manner, nor by any means, to aid in the prosecution of any such claim,*

within two years next after he shall have ceased to be such officer, clerk or employee." (Italics ours.) There is no question, in our opinion, but that the contract which plaintiff made required him to aid in the prosecution of a claim against the United States, viz., the claim of the defendant Laguna Land & Water Company that the report of agent Sullivan to the department concerning additional income tax liability of the corporation for the years 1918–1922 was erroneous in the three particulars mentioned in said defendant's protest filed with the department, and that such additional liability did not as a matter of fact exist. There is no question, either, that the employment of plaintiff was within the two years' period fixed by the statute, so if *such claim* was pending in the department at the time of plaintiff's employment therein the section would apply, but otherwise not.

Plaintiff testified that the local office of the department turned over to him the tax returns of the Laguna Land & Water Company for the years 1918 to 1922 inclusive, "and asked me to make customary investigation of their tax liability, that is, and see if they had paid the proper amount of tax; if not, to determine what it should have been". He also said that at the time his resignation became effective his work in the office of defendant corporation had reached only the preliminary stage—that "my investigation of their books had been only of a preliminary nature; I had not reached in that investigation the point where I knew if the corporation owed the government any money or not". It would seem that "such claim" could not by any means have been pending in the department while plaintiff was an employee and that the section cited did not prohibit the making of the alleged contract. Respondent says that each return filed by it "set forth *a claim* that the amount of tax shown to be due for each of said years was the correct amount due, and each and every other statement in said return material as a basis for the computation of the tax in question was *a claim* on the part of respondent that the facts stated were true". We must admit such to be the case, but that is not a "claim against the United States", within the meaning of said section, in our opinion, and no "such claim" under said section came into being until agent Sullivan's report and respondent's protest thereto were filed.

(2) Under such contention respondent also relies upon Circular No. 230, promulgated by the Secretary of the Treasury under authority of section 3 of the act of July 7, 1884 (23 Stats. at Large, 258, 2 Fed. Stats. Ann., 2d ed., p. 194, 5 U. S. C. A., sec. 261). The circular so promulgated reads: "(5) Knowledge Through Connection with the Treasury Department. No attorney or agent shall be permitted to appear before the Treasury Department in connection with any matter to which such attorney or agent gave personal consideration, or as to the facts of which he had actual personal knowledge while in the service of the Treasury Department, and likewise, no such attorney or agent shall receive assistance from anyone formerly in the service of the Treasury Department and having such personal knowledge." Appellant contends that Congress, having already acted upon the subject of barring agents for claimants because of previous service in the department, and by inference, at least, saying that such officers, agents and employees as were not so barred could practice before the department or aid others so to do, and that the secretary could not enlarge the prohibitive feature of the act of Congress by extending it to matters to which such officers, agents and employees gave "personal consideration" or to facts of which they "had actual knowledge while in the service" of the United States. It is to be observed that section 190 of the Revised Statutes (5 U. S. C. A., sec. 99), prevents representation in the prosecution of "any claim" pending in any department while such officer was in the service, or in any way aiding such prosecution. It is also urged that the authority of the secretary was limited to "the recognition of agents, attorneys", etc., "before his department" and to qualifications so to appear, and does not extend to "disqualifying" agents because of any previous connection with the department or to prohibiting contracts for services "not before" the department. Respondent urges that the language of section 3 of said act of Congress, authorizing the Secretary of the Treasury to "prescribe rules and regulations governing the recognition of agents, attorneys or other persons representing claimants before his department", is a complete grant of power and is not added to or limited in any manner by the further provisions of the act. If the language stood by itself we would agree with respondent, but the first paragraph is

not complete with the language quoted, for following a comma after the word "Department" is the following: "and may require of such persons, agents and attorneys, before being recognized as representatives of claimants, that they shall show that they are of good character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and otherwise competent to advise and assist such claimants in the presentation of their cases". Something must have been intended by the language last quoted, and it would seem to be entirely unnecessary if Congress intended to confer the broad powers that could be inferred from that first quoted. We are of the opinion that by the language last quoted Congress intended to indicate the nature of the qualifications or disqualifications which the secretary was authorized to impose.

The language of the regulation is, in our opinion, broader in its prohibitive effect than merely applying to appearance "before" the department, as it prohibits such attorney or agent from aiding or assisting "another in any such matter"; and it would seem also that to sell knowledge acquired in a particular employment, to be used in a claim against the employer, which is the thing the regulation seems to be aimed at, would have such a close connection with the "good character" and "good repute" of such an agent, even though he had left the service, that it would be a proper subject of rule and regulation within the provisions of said act of July 7, 1884, even though the result might be to disqualify such agent from practicing before the department or aiding or assisting another so to do. We therefore conclude that the promulgation of Circular No. 230 was within the authority of the secretary, and that the same covers a different and narrower field than section 190 of the Revised Statutes (5 U. S. C. A., sec. 99), which makes the disqualification effective if the claim being prosecuted was pending in *any* of the departments, and whether it received the personal or any consideration of the agent, or whether it came to his knowledge or not, and apparently regardless of any moral question involved, while the regulation questioned seems to be based upon the moral phase alone, which appears to be authorized by said act. The admission in evidence of said circular, therefore, in our opinion was not error.

■ What, then, is meant by "personal consideration"? The word "personal" would seem to mean something done by the attorney or agent, and we think the word "consideration" is not used as a synonym for "attention", which would include almost anything from slight notice to close scrutiny, but rather that it involves the idea of such attention as would put the attorney or agent in the possession of facts which it would be improper for him to use as against his employer. Certainly the mere fact that a claim was pending would not involve a moral question, unless the attorney or agent used such knowledge for the purpose of soliciting employment against his employer, and such a "fact", viz., knowledge of the pending of a claim in the department in which he had been employed, without more, is not the "actual personal knowledge of facts" that would prevent such agent from accepting unsolicited employment after leaving the service. In our opinion, as said before, the purpose of the regulation is to prevent the moral wrong involved in an agent's using information obtained about a case while employed in the department against his employer after leaving the latter's services. ■ In the instant case just what information did plaintiff have by reason of his "preliminary work" on the books of the defendant corporation? He knew when he was assigned such work that the government wanted him to verify the tax returns of the corporation for the years mentioned. He also probably knew that the corporation exchanged $1,000,000 of its capital stock as fully paid for certain leases, and that said corporation had purchased 2,770 acres of land prior to March 1, 1913, which it was subdividing and selling, all of which also appeared from a very cursory examination of agent Sullivan's report, which was shown him. He certainly knew that for income tax purposes the company was entitled to a valuation of said property as of March 1, 1913. Knowing that, and taking his testimony and giving it all inferences favorable to appellant's case—which we must do on a motion for nonsuit (*Carter* v. *Canty*, 181 Cal. 749 [186 Pac. 346])—he still had not reached a point when his resignation became effective where he knew that any additional tax would ever be claimed by the government, or that the corporation would ever have a claim against the government. Giving appellant's evidence such favorable consideration, and disregarding conflicts and unfavorable inferences, we

cannot say that the contract in question was either contrary to law, public policy or good morals.

(3) The first count in the complaint is for "the reasonable value of services performed by plaintiff at said defendants' request and on its behalf and for its benefit, consisting of advice, preparation of documents and other services connected with and resulting in the saving to said defendant Laguna Land & Water Company of the sum of $32,820.78", alleging that said defendant requested plaintiff to render such services and agreed to pay the reasonable value thereof, namely, $8,205.19. The second cause of action is substantially the same, except the saving is alleged to have been $45,167.84 and the reasonable value of the services rendered $22,583.92. The third count is to recover for certain work, labor and services of the reasonable value of $100, but apparently all the evidence is on the first two causes of action and we fail to find any on the third. The testimony of plaintiff was that he told Mr. White "It was not reasonable for any man to take it upon a day's basis. If I were to save the corporation $50,000 or more as a result of two or three days' work it wasn't reasonable to place that value upon the number of hours it took; that that value should be placed upon the ability to do the work. He agreed with me and wanted to know the price I would make. I told him I thought the fairest thing was the contingent basis, no results—no pay", and that upon that basis he was employed. One expert witness produced by plaintiff fixed the reasonable value of the services at twenty-five per cent of the amount saved, and another as $15,000 on the first cause of action and $5,000 on the second. Each count is apparently based on the reasonable value of the services rendered, based on the saving made, which is the contract proved, viewing the evidence in plaintiff's favor, as we must, and we fail to see any variance.

Respondent assumes in its brief that the evidence shows a breach of the original contract under which Mr. White, secretary of the corporation, was to represent respondent before the department, in that an attorney was employed for that purpose; but the evidence is susceptible to the inference that this did not change the obligation of appellant under the agreement, and whether or not it did is a question the jury should determine and not an appellate court.

The motion for nonsuit was properly granted as to the third cause of action, but the issues on the first two causes should have gone to the jury.

The judgment as to the third cause of action is affirmed. As to the first and second causes it is reversed, appellant to recover his costs of appeal.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 27, 1931.