## CASE v. HELWIG (CALHOUN, Intervener). No. 5696.

Court of Appeals of the District of Columbia.

Argued March 7, 1933.
Decided April 10, 1933.

Rehearing Denied April 25, 1933.

Rehearing for Intervener Denied April 27, 1933.

Levi H. David, of Washington, D. C., for appellant.

Herman J. Galloway, of Washington, D. C., for appellee Helwig.

Wm. E. Richardson, of Washington, D. C., for appellee Calhoun.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from an interlocutory order of the Supreme Court of the District (section 26, title 18, D. C. Code, 1929; section 226, D. C. Code, 1924).

On January 31, 1925, appellant, Ralph H. Case, and Harry F. Helwig, members of the bar, entered into a contract with the Wheeling Steel Corporation of Wheeling, W. Va., successor in interest of the La Belle Iron Works, under which Case and Helwig were to prosecute a claim of the Wheeling corporation against the United States on a 25 per cent. contingent fee basis, Case and Helwig to divide the fees equally in case of success.

On February 14, 1925, Case and Helwig filed suit in the Court of Claims. On April 6, 1931, judgment was entered in that court for $76,551.98, including principal and interest. Twenty-five per cent. of this amount, or $19,137.99, was paid to Mr. Case.

Early in January, 1928, Mr. Helwig, having "accepted employment by the United States Government" as one of its attorneys, and desiring to "absolutely disassociate himself with the further prosecution" of the Wheeling corporation's claim, entered into a supplemental agreement with his associate, Mr. Case, under which it was agreed that the services theretofore performed by Helwig "in connection with the foregoing claim against the United States are equivalent to two-fifths of the entire work and services performed and to be performed in connection with said claim; that Helwig had assigned to his brother, George W. Helwig, the value of the services theretofore performed by him, that Case was to continue the prosecution of the claim, and that all fees should be paid to him and distributed by him in accordance with the supplemental contract.

The assignment from Harry Helwig to his brother, George Helwig, bore the same date as the supplemental agreement, and referred to that instrument. It recited that Harry Helwig "is indebted to the said George W. Helwig and Ruth C. Helwig for certain advances and expenditures incurred in the care of their parents and also to Hazel S. Helwig for certain advances made"; that in consideration of the premises, "and in order to properly protect all of the aforesaid persons for said advances made and expenditures incurred, together with any further or future advancements and expenditures," Harry Helwig assigns the entire value of the services performed by him in the claim against the United States to George W. Helwig; that whatever amount may be received under the assignment shall be applied to the liquidation of the indebtedness to the persons named, and, in the event there is any balance, it shall become the absolute property of George W. Helwig "for services rendered." In the event "the aforesaid proceeding (Wheeling Company's suit) should ultimately result in a final judgment for the defendant or the amount thereof in favor of the plaintiff is such that the aforesaid two-fifths interest of said Harry F. Helwig, herein and hereby assigned, in the fee for services rendered, is sufficient (insufficient) to liquidate the said indebtedness, then and in such event the said Harry F. Helwig shall continue to be obligated for the entire amount thereof or for so much thereof as may remain unpaid after the application thereon of the total amount received by said George W. Helwig

in accordance with the provisions of this agreement." The term "sufficient" is obviously a misprint and should be read "insufficient."

George W. Helwig, through his attorneys, demanded of Case $7,655.19, being two-fifths of the moneys collected by Case on account of fees for the prosecution of the claim of the Wheeling corporation. Case declined to pay. Helwig filed his bill, setting forth the facts already detailed.

Thereupon appellee Clarence C. Calhoun filed an intervening petition, praying that he be made a party and aligned with plaintiff. In his petition Calhoun alleges that prior to August, 1922, Harry F. Helwig, being desirous of associating himself with Calhoun, a practicing attorney before the government bureaus and courts, entered into an agreement with Calhoun whereby they were to become jointly associated in the prosecution of certain claims against the United States, one of which was the claim of the La Belle Iron Works, "it being understood that the matter was in the particular charge of said Helwig"; that, without the knowledge or consent of Calhoun, Helwig entered into an agreement with Case to obtain a new contract and power of attorney from the Wheeling corporation. Calhoun claims to be equitably entitled to a portion of the fee ultimately realized; alleges that the assignment of Helwig to his brother "is merely a colorable transfer, and that said Harry F. Helwig remained and is now the real party in interest."

On consideration of the petition of George W. Helwig, the intervening petition of Calhoun, and the answer, the court appointed receivers for the sum of $7,655.19, and ordered Case to turn over that amount to them, which was done.

Section 109 of the Criminal Code of the United States (section 198, title 18, U. S. C. [18 USCA § 198]) provides that "whoever, being an officer of the United States, or a person holding any place of trust or profit, or discharging any official function under, or in connection with, any executive department of the Government of the United States, * * * shall act as an agent or attorney for prosecuting any claim against the United States, or in any manner, or by any means, otherwise than in discharge of his proper official duties, shall aid or assist in the prosecution or support of any such claim, or receive any gratuity, or any share of or interest in any claim from any claimant against the United States, with intent to aid or assist,

or in consideration of having aided or assisted, in the prosecution of such claim," shall be fined or imprisoned, or both.

It is of course not disputed that Harry Helwig, as an attorney of the United States, was an officer of the United States within the meaning of the above statute. It is likewise not disputed that under the terms of that statute he was prohibited from thereafter having any interest in the prosecution of any claims against the United States. Under the supplemental agreement between Case and Harry Helwig, Helwig was to receive nothing in the event of a final judgment for the defendant. In the event of a judgment for the claimant, he was to receive a sum equivalent to two-fifths of the entire fee, which embraced all services performed both before and subsequent to the date of the supplemental agreement. It was decidedly in his interest, therefore, that there should be a successful termination of the suit against the government. The statute, we think, contemplates the complete severance of interest by one who, during the prosecution of any claim against the United States, becomes an officer of the United States. "The evident purpose of congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service." Ex parte Curtis, 106 U. S. 371, 373, 1 S. Ct. 381, 384, 27 L. Ed. 232.

The assignment by Harry Helwig to his brother is still more objectionable, for it contemplates "further or future advancements and expenditures" down to the date of the receipt by George Helwig of two-fifths of the fees collected by Case, and, in the event of an adverse judgment, or in the event the two-fifths interest of Harry Helwig in the fees for services rendered is insufficient to liquidate the indebtedness forming the consideration for the assignment, Harry Helwig "shall continue to be obligated for the entire amount thereof or for so much thereof as may remain unpaid after the application thereon of the total amount received by said George W. Helwig in accordance with the provisions of this agreement." It is too plain to admit of doubt that by this provision Harry Helwig retained an interest in the prosecution of the claim. Obviously, his interest so conflicted with the interests of the government that he would not have been qualified to act for the government in defending against the claim.

The supplemental agreement between

Case and Helwig and the agreement between the Helwig brothers violated the public policy of the United States as expressed in section 109 of the Criminal Code, and therefore are void. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539. By entering the government employ, Helwig became incapacitated to perform further service in the prosecution of the claim, and in the circumstances of this case he must be held to have abandoned all claims to compensation for past services.

Mr. Calhoun claims an equitable interest in Harry F. Helwig's fee, but we have ruled that Helwig is not entitled to a fee. Inasmuch as Calhoun claims through Helwig, the claim must fail.

The decree is reversed, with costs.

Reversed.