## UNITED STATES v. BERGSON.
### Cr. No. 1815-53.

United States District Court
District of Columbia.
Jan. 29, 1954.

Leo A. Rover, U. S. Atty. for the District of Columbia, Washington, D. C., and Murry Lee Randall, Washington, D. C., for the U. S.

John J. Wilson and Roger J. Whiteford, Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

The defendant is being prosecuted under Title 18, U.S.C., Paragraph 284. That paragraph reads as follows:

"Whoever, having been employed in any agency of the United States, including commissioned officers assigned to duty in such agency, within two years after the time when such employment or service has ceased, prosecutes or acts as counsel, attorney, or agent for prosecuting, any claims against the United States involving any subject matter directly connected with which such person was so employed or performed duty, shall be fined not more than $10,000 or imprisoned not more than one year, or both. June 25, 1948, c. 645, 62 Stat. 698, amended May 24, 1949, c. 139, § 7, 63 Stat. 90."

The indictment consists of 2 Counts. The charges in the indictment are that on two occasions, both within two years after the time defendant's employment in the Department of Justice had ceased defendant had violated the above statute in that on both occasions he "acted as counsel" for certain named companies "for prosecuting a claim against the United States involving a subject matter directly connected with which" the defendant "had been employed and performed duty while employed in the Department of Justice," as aforesaid.

In the First Count the following allegation is set forth:

"That is to say that said Herbert A. Bergson, at the time and place aforesaid pursuant to an established procedure of the Department of Justice, acting as counsel for The Minnesota Mining and Manufacturing Company and The Carborundum Company, by oral and written representations and arguments, sought to obtain from the said Department of Justice on behalf of The Minnesota Mining and Manufacturing Company and The Carborundum Company the issuance by said Department of an antitrust merger clearance letter which would state in substance that should the Minnesota Mining and Manufacturing Company acquire the assets of The Carborundum Company the Department of Justice would not take any action pursuant to the established procedures of the antitrust laws to test the legality of the acquisition if it were consummated in the manner outlined to the Department of Justice by the Minnesota Mining and Manufacturing Company and The Carborundum Company."

In the Second Count the following allegation is set forth:

"That is to say that said Herbert A. Bergson at the time and place aforesaid pursuant to an established procedure of the Department of Justice, acting as counsel for the United States Pipe Line Company, by oral and written representations and arguments, sought to obtain

from the said Department of Justice on behalf of the United States Pipe Line Company the issuance by said Department of an antitrust clearance letter (variously known as a 'Railway release letter' and a 'Railroad release letter') which would state in substance that should the United States Pipe Line Company effectuate a proposed plan for the construction and operation of certain pipe lines, the Department of Justice would not institute criminal proceedings against the United States Pipe Line Company under the antitrust laws if it were effectuated in the manner outlined to the Department of Justice by said Company."

The Motion of judgment for Acquittal by defendant filed pursuant to Rule 29 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., involves two main grounds—1) that the conduct charged against defendant and the evidence in support of that charge do not involve claims against the United States or the prosecution of claims against the United States, and 2) that the conduct charged and the evidence in support thereof was not conduct involving a subject matter directly connected with the defendant's former government employment.

The questions posed in this motion are:

1. What is the meaning of the term "claims against the United States" as used in Title 18 U.S.C. § 284.

2. What is meant by the term "any subject matter directly connected with which such person (that is a person who had ceased employment in any agency of the Government within 2 years) was so employed or performed duty" as used in said Title 18 U.S.C. § 284.

3. Does or does not the evidence establish that the defendant acted as counsel for the prosecution of claims against the United States in violation of the foregoing statutory provision?

■ It is hornbook in connection with this motion that the evidence and all implications thereof are to be construed most strongly against movant. The general rule likewise applies that penal statutes are to be construed strictly.

■ It is the province of the Court, and the duty and responsibility of the Court to construe this Statute and in doing so it is further the province, duty and responsibility of the Court to determine the meanings of the words used in the Statute. That duty does not involve the task of determining such meanings as an abstract matter. The Court is not called upon to conduct an experiment or solve a problem in clinical linguistics or semantical metaphysics. We are dealing with a concrete law which states things which a person is prohibited, under penalty of punishment from doing. The Court's duty is to determine word meanings realistically; to determine the meaning of the words, not as words standing alone, but the meaning of words as used in the Statute which the Court is called upon to interpret and construe in order that the Court may in turn so interpret and construe the meaning of the Statute. This is not only the law. It is as well plain common sense—and in saying this the Court does not by any means wish to be understood to suggest that there is any difference or distinction between what is the law and what is common sense. In any event the construction of statutes is not a contest, a game to be played. Especially is this true as to Criminal Statutes, upon the determination of the meaning of which depends what acts are prohibited to be done by living persons. Both the public, that is society at large—those potentially chargeable with a violation of law, and those actually charged therewith are vitally interested in the question as to just what the law, the statute, means.

■ The general rule or criterion which the Court should apply in determining the meaning of a statute are set out in the opinion of the Supreme Court in the case of United States v. American Trucking Associations, 310 U.S. 534,

60 S.Ct. 1059, 1063, 84 L.Ed. 1345. The Court speaking through Justice Reed stated:

"In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. Emphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, 'excepting as a different purpose is plainly shown.' "

Passing the salient statement of the Court that in the interpretation of Statutes there is no more persuasive evidence of the purpose of the Statute than the words by which the legislature undertook to give expression to its wishes, as well as that in which the Court states that often these words are sufficient in and of themselves to determine the purpose of the legislation, this Court goes on to comply with the Supreme Court's injunction, upon which the opinion states emphasis should be laid, to the appraising the purposes as a whole of Congress, or in other words, to look to legislative intent. No judicial construction of the applicable section having been brought to the Court's attention, the Court turns to the legislative history of the Act.

Defendant has been indicted under Section 284 of Title 18 U.S.C.

This section prohibits former Government employees from prosecuting claims against the United States which involve subject matter with which such persons were employed or performed duty. This section in connection with Sections 281 and 283, the same title, and Section 99 of Title 5 U.S.C.A., constitute what are

generally known as the conflict of interests statutes.

Sections 281 and 283 of Title 18, mentioned above, date back much farther than Section 284. The earliest of these was enacted in 1853, 10 Stat. 170. It is from this Act that the present Section 283 was derived. This Section prohibits officers and employees of the United States from prosecuting any claim against the United States, or from aiding or assisting in the prosecution of such claim. It appears to cover claims regardless of where they are brought, that is to say whether they be brought in executive, administrative and judicial proceedings.

The origin of Section 281 dates back to 1864, 13 Stat. 123.

Section 281 prohibits Members of Congress, officers and employees of any department or agency from receiving compensation for services rendered in "relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party * * * before any department, agency, court martial, officer, or any civil, military or naval commission". This section appears to limit the activities of these persons before administrative and executive proceedings, but does not appear to limit their activities in court proceedings. Attention is called to the fact that both Sections 281 and 283 only limit the activities of present employees, while 284 refers to former employees.

Section 99 of Title 5 prohibits former officers and employees of the United States from prosecuting any claim against the United States if such claim was pending in the department while they were employed there. This section had its origin in the Post Office Appropriation Bill of June 1, 1872, 17 Stat. 202, Rev.Stat. § 190. The section is similar to Section 284 of Title 18 in that it refers to former employees and officers. However, there is a difference, in that Section 284 prohibits prosecuting any claims, while Section 99 refers only to claims in Departments. Thus,

Section 284 is a broader prohibition than Section 99 only so far as concerns place of prosecution.

Former Section 100 of Title 5 was a section of the Act of July 11, 1919, which was the Army Appropriation Bill of that year. This section prohibited any former commissioned officer or employee of the United States, who had been employed in procuring supplies for the Military Establishment, from soliciting or accepting employment in the presentation of claims against the Government arising out of any contracts or agreements for such supplies. This action was limited in time of application to persons who served in such capacities between April 6, 1917 and July 11, 1919.

The War Department during World War II recommended to Congress that persons employed on a temporary or intermittent basis be exempted from the prohibition of Section 109 (now 283) and 113 (281) of the Criminal Code, and Section 99 of Title 5 U.S.C. It appears that this recommendation stemmed from the shortage of available help during the war years. It was believed that if these prohibitions were removed, qualified practitioners (not only lawyers, but accountants and other professional men) might be induced to work on a part time basis.

The result of this recommendation was that Congress provided in subsection (j) of the Act entitled "Renegotiation of War Contracts"—

"Nothing in sections 109 and 113 of the Criminal Code or in section 190 of the Revised Statutes (5 U. S.C. § 99) shall be deemed to prevent any person appointed * * * for intermittent and temporary employment * * * from acting as counsel, agent, or attorney for prosecuting any claim against the United States: Provided, That such person shall not prosecute any claim against the United States (1) which arises from any matter directly connected with which such person is employed, or (2) during the period such person is engaged

in intermittent and temporary employment in a department." 50 U.S. C.A.Appendix, § 1191.

Subsection (j) of the Renegotiation of War Contracts Act, 56 Stat. 985, thus excepted persons employed by the Government on a temporary or intermittent basis from the prohibition against prosecuting claims against the Government, provided the claims presented were unrelated to their Federal employment.

During the consideration of the "Contracts Settlement Act" in 1944, an amendment to repeal subsection (j) was offered by a Congressman who believed that this subsection of the 1942 Act had weakened 5 U.S.C.A. § 99. The purpose of this amendment was to restore the older law. Subsection 19(e) of the Act of July 1, 1944, 58 Stat. 667, evolved from this amendment.

Subsection 19(e) provided that any person employed in a Government agency was prohibited from prosecuting any claim against the United States, when such claim involved subject matter with which such person was employed or performed duty, during the time of his employment, or for a period of two years thereafter. When codified this subsection of the 1944 Act became 41 U.S.C.A. § 119. This section was an enlarged version of the 1919 Act in that it applied to any person employed by the United States, and had no time limitation. Although the subject matter of the Act was the settlement and termination of war contracts, this subsection does not appear to limit its application to claims arising under such contracts.

In the revision of Title 18 U.S.C. in 1948 the revisors consolidated 5 U.S.C.A. § 100 and 41 U.S.C.A. § 119, 1940 ed. The result was Section 284, the section upon which this case is based.

The earlier acts from which Section 284 has evolved were limited in their prohibition to "claims" in the strict sense of the word, i. e. the demand of an interest in money or property adverse to the interest of the United States. In

Section 281 Congress has prohibited several actions in addition to the prosecution of claims. As a result of the expanse of the prohibitions of Section 281 it is evident that when broader prohibitions were intended, appropriate language was used to set them out. When Congress specifies claims only, we must assume that it said what it intended to say.

From its study of the legislative history of Section 284, including consideration of its genesis and of its predecessors or precursors and of the provision contained in the amendment to subsection (j) of the Act of October 21, 1942, 56 Stat. 985, excluding certain temporary employees from the prohibition against prosecuting claims against the United States contained in Sections 109 and 113 of the Criminal Code (U.S. C. 18 Sections 198 and 203) and in Section 190 of the Revised Statutes, U.S. C.A. Title 5, Section 99, the Court is unable to find anything to indicate that it was the intention of Congress that the term "claims against the United States" was intended to cover or embrace anything other than claims against the United States Government for money or for property. As a consequence the Court is not persuaded that to construe the term "claims against the United States" in Section 284 as including solely claims for money and property would, to paraphrase the words of the Supreme Court in Justice Reed's opinion in the American Trucking case, supra, lead to absurd results. The Court's view is to the contrary. The Court is further persuaded of the correctness of its position by resort to reference to administrative interpretations of four Government agencies to the same effect, namely, The Treasury Department, Memorandum of February 16, 1952; National Production Authority, August 27, 1951; Defense Department, Memorandum entitled "Scope and Applicability of Conflict of Interest Statutes"; Judge Advocate General of the Army, Opinion No. 210–85, dated December 19, 1928;

and Judge Advocate General of the Navy Opinion No. 1952–112, dated July 12, 1952.

The Attorney General's Memo No. 40, dated August 27, 1953, entitled "Construction of 18 U.S.C. 284—Disqualifications of Former Officers and Employees in Matters Connected with Former Duties," states that the legislative history throws little light on the meaning of the statute, and the Court feels justified in assuming that the Memorandum is based upon that predicate. This Court has concluded, as aforestated in its foregoing analysis, that the legislative history of Section 284 is such as to persuade the Court that the term "claims against the United States" as used in said Section is intended by Congress to be limited, and consequently that such term is limited to demands against the Government for money or for property.

In connection with this conclusion, the Court feels the following excerpts from Supreme Court opinions are pertinent: In the case of U. S. v. Universal C. I. T. Credit Corp., 344 U.S. 218, at page 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, the Court stated:

"Not that penal statutes are not subject to the basic consideration that legislation like all other writings should be given, insofar as the language permits, a commonsensical meaning. But when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication."

Again in U. S. v. Alpers, 338 U.S. 680, at page 681, 70 S.Ct. 352, 353, 94 L.Ed. 457 the following appears:

"We are aware that this is a criminal statute and must be strictly construed. This means that no offense may be created except by

the words of Congress used in their usual and ordinary sense. There are no constructive offenses. (Citing cases.) The most important thing to be determined is the intent of Congress. The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent of Congress."

In Winters v. People of State of New York, 333 U.S. 507, at page 515, 68 S.Ct. 665, 670, 92 L.Ed. 840, the Court stated:

"The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement. The crime 'must be defined with appropriate definiteness.' (Citing cases.) There must be ascertainable standard of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment."

The cases of Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 873, 29 L.Ed. 940 and U. S. v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616, contain definitions of "claims against the United States". In the Cohn case the situation was that the defendant was indicted under the following statute for presenting a false claim against the United States, to wit Section 35 of the Penal Code [see 18 U.S.C.A. § 286 et seq.] which reads as follows:

"Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, * * * any claim upon or against the government of the United States * * * knowing such claim to be false, fictitious, or fraudulent; or whoever, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, or for the purpose and with the intent of cheating and swindling or defrauding the government * * * shall be fined

not more than $10,000 or imprisoned not more than ten years, or both."

A shipment of cigars consigned to defendant was in the customhouse. The shipment was not to be delivered to defendant until payment of a draft to a bank. Before the draft had been paid, defendant fraudulently procured certain officials of the customhouse to obtain possession of the shipment from the collector by giving a bond for the production of the bill of lading. On a demurrer the indictment was dismissed on the ground that it did not state an offense against the United States.

Judgment of the District Court was affirmed. The Supreme Court stated that the method by which defendant gained possession of the shipment did not constitute an offense against the United States; the acts were not done with the purpose of "defrauding the Government" or for the purpose of obtaining the approval of a "claim upon or against" the government. In discussing whether these acts constituted a claim the Court stated:

"Obtaining the possession of nondutiable merchandise from a collector is not obtaining the approval of a 'claim upon or against' the Government, within the meaning of the statute. While the word 'claim' may sometimes be used in the broad juridical sense of 'a demand of some matter as of right, made by one person upon another, to do or to forbear to do some act or thing as a matter of duty,' Prigg v. [Commonwealth of] Pennsylvania, 16 Pet. 539, 10 L.Ed. 1060 [1089], it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the government, based upon the Government's own liability to the claimant."

In Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 873, 29 L.Ed. 940,—This was an action by former partners of a bankrupt against his assignee in bankruptcy. Partners allege that a judgment which the bankrupt had obtained against the United States was a partnership asset, and that it should not be distributed among the general creditors. From a circuit court judgment which found the partners entitled to the sum in question, the assignee appealed. Assignee alleged that the partnership agreement, and notes executed by the bankrupt which promised to pay certain sums to the partners out of moneys to be received "on account of my claim against the United States" were forbidden by R.S. § 3477, 31 U.S.C.A. § 203, and R.S. § 3737, 41 U.S.C.A. § 15.

R.S. § 3477 provided "all transfers and assignments made of *any claim upon the United States* * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof".

R.S. § 3737 provided "No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract * * *."

The Court held that neither the partnership agreement nor the notes were affected by the above sections. At the time the partnership agreement was executed there was no claim in existence. The Court stated:

"When those articles were signed there was no claim against the United States to be transferred. Peck had at that time no contract even with the United States, and there was no certainty that he would have one. What is a claim against the United States is well understood. It is a right to de-

mand money from the United States."

A study of four cases cited and relied on by the Government, Case v. Helwig, D.C., 65 F.2d 186, Day v. Laguna, 115 Cal.App. 221, 1 P.2d 448, Ludwig v. Raydure, 25 Ohio App. 293, 157 N.E. 816, certiorari denied 275 U.S. 545, 48 S.Ct. 84, 72 L.Ed. 418, and United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, fails to convince the Court that it's interpretation of the meaning of the words "claims against the United States" as used in Section 284 heretofore stated, should not be adhered to.

The case of Viereck v. United States, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734, although differing entirely as to the character of penal statute involved, contains a statement of general rules which seem pertinent in the instant situation.

The Defendant was prosecuted under Act of June 8, 1938, 52 Stat. 631, as amended by Act of August 7, 1939, 53 Stat. 1244, 22 U.S.C.A. § 611 et seq., under which, generally one who was an agent of a foreign principal was required to register with the Secretary of State. By Paragraph (3) every registrant was required to file a supplemental statement setting forth his activities in the preceding six months, and Paragraph (3) required the filing of a statement containing such details required under this Act as the Secretary shall fix, of the activities of such person as agent of a foreign principal during such six months period.

The Supreme Court in an opinion by Chief Justice Stone in construing the statute stated and held that the statute did not command or authorize the Secretary to command registrants to make any statement of their activities other than those in which they are engaged "as agent". The Court said, 318 U.S. at page 243, 63 S.Ct. at page 564:

"We cannot read that phrase as though it had been written 'while an agent' or 'who is an agent'. The unambiguous words of a statute which imposes criminal penalties are not to be altered by judicial construction so as to punish one not otherwise within its reach, however deserving of punishment his conduct may seem. Nor is such an alteration by construction aided by reference to § 6, which directs the Secretary to prescribe rules and regulations 'to carry out this Act'. For, as we have seen, the only provision of the Act relating to statements of the registrant's activities is § 3(c), which defines its own and the Secretary's limitations. Section 6 does not give to the Secretary any authority not to be found in the act, and especially not an authority which overrides the specific limitations of § 3(c).

"While the Congress undoubtedly had a general purpose to regulate agents of foreign principals in the public interest by directing them to register and furnish such information as the Act prescribed, we cannot add to its provisions other requirements merely because we think they might more successfully have effectuated that purpose. And we find nothing in the legislative history of the Act to indicate that anyone concerned in its adoption had any thought of requiring, or authorizing the Secretary to require, more than a statement of registrants' activities in behalf of their foreign principals."

The Court then referred to Congressional material containing the legislative history of the Act. The Court's opinion then went on:

"Even though the specific restriction of § 3(c) were due to defective draftsmanship or to inadvertence, which hardly seems to be the case, men are not subjected to criminal punishment because their conduct offends our patriotic emotions or thwarts a general purpose sought to be effected by specific commands which they have not disobeyed. Nor are they to be held guilty of offenses which the statutes have

omitted, though by inadvertence, to define and condemn. For the courts are without authority to repress evil save as the law has proscribed it and then only according to law." 318 U.S. 236, 63 S.Ct. 561, 564, 87 L.Ed. 734, 740.

 The Court having concluded that the term "claims against the United States" as used in Title 18, U.S.C. Paragraph 284 is limited to demands for money or property, the Court further concludes that the evidence fails to establish that the Defendant acted as counsel for the prosecution of claims against the United States in violation of Title 18 U.S.C. Par. 284. These conclusions being dispositive of the motion, the Court sustains defendant's motion for judgment of acquittal of the indictment herein as to both Counts thereof, and hereby orders entry of judgment of acquittal of the offenses charged in both Counts of the indictment.